UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RLIS, Inc. | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-209 |
| | § | |
| CERNER CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## COURT'S INSTRUCTIONS TO THE JURY

The following instructions were presented to the jury on the 16th day of January, 2015.

## MEMBERS OF THE JURY:

Now that you have heard the evidence, it becomes my duty to give you the instructions of the Court as to the law applicable to this case. It is your duty as jurors to follow the law as stated in the instructions of the Court, and to apply the rules of law so given to the facts as you find them from the evidence in this case. You, the jury, are the judges of the facts.

## Court's and Jurors' Duties

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court, just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have an opinion about this case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jury and to arrive at the verdict by applying the same rules of law as given in the instructions of the Court.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the evidence. You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

## Consideration of Evidence

**General:** In determining whether a party has met the burden of proof on any fact in issue, you may, unless otherwise instructed, consider the sworn testimony of all witnesses, regardless of who may have called them, all exhibits received in evidence, regardless of who may have produced them, and all facts which may have been admitted or agreed to. Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

**Objections & Redactions:** At times during the trial, I sustained objections to questions asked without permitting the witness to answer. You may not draw any inference from a question that was not answered because I sustained an objection. The law requires that your decision be made solely upon the competent evidence I received in this case.

The evidence includes some documents that have been partially redacted, which means that certain contents of the documents have been whited out. You should not speculate as to what the redacted information is or give any weight to the fact that a document is redacted.

I remind you that statements and arguments of counsel are not evidence in the case, nor are they instructions on the law.

**Types of Evidence:**  There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence.  In determining whether a party has met his burden of proof, you must consider all the credible evidence, both direct and circumstantial.  While you are to consider only the evidence in the case, you are permitted to draw such reasonable inferences as seem justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from facts which have been established by the testimony and evidence in the case.

**Credibility of Witnesses and Weight of Evidence:**  Now, I have said that you must consider all of the evidence.  This does not mean, however, that you must

accept all of the evidence as true or accurate.  As the sole judges of the facts, you must determine the credibility, or "believability," of each witness, and what portion of his or her testimony you accept and what weight you attach to it.

You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter of evidence which tends to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive, state of mind, demeanor, and manner while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that

was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory, and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.  The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witness, and which evidence, appeals to your minds as being most accurate, and otherwise trustworthy.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers to every question and your verdict must be unanimous.

**Deposition Testimony:** During the course of trial, certain testimony was presented to you through deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if

a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

### Jurors' Notes

If you have elected to take notes during this trial, your notes should be used only as memory aids. You should not give your notes precedence over your independent recollection of the evidence. If you did not take notes, you should rely upon your own independent recollection of the proceedings and you should not be unduly influenced by the notes of other jurors.

Notes are not entitled to greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you have taken notes or not, you must form and express your own opinion as to the facts of the case.

## SPECIFIC INSTRUCTIONS

RLIS filed suit against Cerner for allegedly infringing the'436 Patent by making, using, selling, and offering for sale products that RLIS argues are covered by claims 24-25, 27-28, 30, and 32 of the'436 patent. Cerner denies that it has infringed the '436 Patent. Furthermore, Cerner contends that the asserted claims of the '436 Patent are invalid, which is a defense to infringement. RLIS denies that the patent is invalid.

Your job is to decide whether the asserted claims have been infringed and whether any of the asserted claims are invalid. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide what amount of money damages, if any, are to be awarded to RLIS as compensation for such infringement.

Before you can decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. A claim sets forth a set of requirements. The claims are important because it is the words of the claims themselves that define what a patent covers. The rest of the patent provides a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

You must understand the words in a claim to be able to understand the scope of coverage for each claim. It is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case. I have provided to you my definitions of certain claim terms. These are in your juror notebooks. For any words in the claim for which I have not provided you with a definition, you should apply their common and ordinary meaning.

## INFRINGEMENT

A patent owner has the right to exclude others from making, using, offering to sell, or selling the invention covered by the patent claims during the life of the patent. Infringement occurs when a person, without the patent owner's permission, makes, uses, sells, or offers for sale, something that is within the scope of what the patent covers.

Infringement results if the accused product is covered by at least one claim of the patent. In determining whether Cerner's PowerNote product infringes one or more of RLIS's asserted claims, you must compare the accused product with each and every one of the requirements of a claim to determine whether the accused product contains each and every requirement recited in a claim. A claim requirement is present if it exists in an accused product as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art. If the accused product omits even a single requirement recited in a claim, then you must find that the particular product does not infringe that particular claim.

RLIS must prove infringement by a preponderance of the evidence. A preponderance of the evidence simply means that the evidence persuades you a fact is more likely true than not true.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another claim. RLIS need only show that any one of the claims is infringed to be entitled to damages.

You will notice that the preamble to several of the asserted patent claims uses the term "comprising". The word "comprising" means "including the following but not excluding others." If you find that Cerner's product includes all of the elements or steps in claims using the term "comprising," the fact that Cerner's product might include additional components or method steps, would not avoid infringement of a claim that uses "comprising" language so long as the presence of the additional components or steps does not negate an element of the claim.

## **Question No. 1: Infringement**

For each claim, has RLIS proven by a preponderance of the evidence that Cerner infringed the claim? If you find that Cerner infringed the claim, you should write "YES" in the box next to that claim. Otherwise, write "NO" in that box.

| Claim | Claim Infringed? |
|-------|------------------|
| 24    | NO               |
| 25    | NO               |
| 27    | NO               |
| 28    | NO               |
| 30    | NO               |
| 32    | NO               |

Regardless of your answers to this question, proceed to the next section.

## INVALIDITY

Cerner contends that the asserted claims of the '436 Patent are invalid. As the '436 Patent was issued by the United States Patent and Trademark Office, it is presumed to be a valid patent. Even though the Patent and Trademark Office has allowed the asserted claims, you the jury must decide whether those claims are invalid.

I will now instruct you on the rules you must follow in deciding whether or not Cerner has proven that the claims of the '436 Patent are invalid. Cerner bears the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

You will hear several terms that I want you to understand. The first is "prior art." Prior art includes previous devices, articles and methods that were publicly used or offered for sale, and printed publications or patents that disclose the invention or elements of the invention. To be prior art, the item or reference must

have been made, known, used, published, or patented before July 8, 1996.

You will also hear the term "a person of ordinary skill in the field or the art" a lot in this case. A person of ordinary skill in the art is a hypothetical person of average education and training in the particular field of invention as of July 1996, and who is aware of all of the relevant prior art. The actual inventor's skill is irrelevant to this inquiry.

### *Anticipation*

For a patent to be valid, the invention claimed in the patent must be novel. In patent law, "novel" means that it is not present or disclosed in the prior art. In general, inventions are new when the claimed product or process has not been made, used, or disclosed before. If a claimed invention does exist in the prior art, it is said to be "anticipated." Anticipation must be determined on a claim-by-claim basis. Cerner contends that the asserted claims are invalid as being anticipated and/or obvious in view of the "prior art."

For the asserted claim to be invalidated as anticipated, Cerner must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, sold, offered for sale, or described in a single piece of prior art (that is, a printed publication, patent, product or process that predates the claimed invention). We refer to such prior art as "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words

as the claim, but all of the requirements of the claim must have been disclosed or present in a single piece of prior art. Each and every claim limitation must expressly be present or implied to a person having ordinary skill in the art of the technology of the invention, so that looking at that piece of prior art, that person could make and use or practice the claimed invention. Finally, to show anticipation of the patented invention, Cerner must show by clear and convincing evidence that the prior art disclosed all of the elements of each claim of the patent that Cerner contends is invalid.

Here is a list of ways that Cerner can show that claims 24-25, 27-28, 30, and 32 of the '436 Patent are invalid as anticipated because they were not novel:

(1) if the claimed invention was known to or used by others in the United States before the date of invention. An invention is known when the information about it was reasonably accessible to the public on that date;

(2) if the claimed invention was already patented or described in a printed publication, anywhere in the world before the date of invention. A description is a "printed publication" only if it was publicly accessible;

(3) if the claimed invention was already described in a printed publication, anywhere in the world, more than a year before July 8, 1996, which is the effective filing date of the application for the '436 Patent;

(4) if the claimed invention was publicly used, sold, or offered for sale, in

this country more than one year before July 8, 1996, which is the effective filing date of the application for the '436 Patent; or

(5) if the claimed invention was already made by someone else in the United States who had not abandoned, suppressed or concealed the invention before the invention was made by RLIS.

I will explain some of these points to you in greater detail. You should not interpret me doing so as an indication that these defenses are any better or worse than the others.

### *On Sale Bar*

Cerner contends that the claims of the '436 patent are anticipated because the invention defined in those claims was on sale in the United States more than one year before the patentees filed their U.S. patent application on July 8, 1996. A patent claim is invalid if, more than one year before the filing date of the patent, the claimed invention was both subject to a non-secret sale or offer for sale in the United States, and ready for patenting. This is called the on-sale bar.

An invention was subject to a commercial offer for sale if the claimed invention was embodied in an item that was actually sold or offered for sale. For this purpose, an "offer for sale" is made if another party could make a binding contract by simply accepting the offer.  It is not required that a sale was actually made. However, for the on-sale bar to apply, the sale or offer for sale cannot have

been a secret. If the claimed product was kept secret and remained secret even after the sale, such sale or offer for sale does not trigger invalidity based upon the on-sale bar.

Next, in order to be invalid based on the on-sale bar, the invention also must have been ready for patenting at the time of the alleged sale or offer for sale. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose.

Finally, to show anticipation of the patented invention based upon the on-sale bar, the product sold or offered for sale must have disclosed all of the elements of each claim of the patent that Cerner contends is invalid.

### *Prior Public Use*

Cerner contends that the claims of the '436 Patent are anticipated because the invention defined in those claims was publicly used more than one year before the patentee filed his U.S. patent application on July 8, 1996. A patent claim is invalid if more than one year before the filing date of the patent an embodiment of the claimed invention was both: (1) accessible to the public or commercially

exploited in the United States; and (2) ready for patenting.

An invention was in public use if the claimed invention was accessible to the public or commercially exploited. Factors relevant to the determination of whether a use was public include the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

Next, in order to be a public use, the invention also must have been ready for patenting at the time of the alleged public use. As I mentioned, an invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose.

Finally, to show anticipation of the patented invention based on public use, the product publically used must have disclosed all of the elements of each claim

18

of the patent that Cerner contends is invalid.

### *Experimental Use*

The law recognizes that the inventor must be given the opportunity to develop the invention through experimentation. Certain activities are experimental if they are a legitimate effort to test claimed features of the invention or to determine if the invention will work for its intended purpose. So long as the primary purpose is experimentation, it does not matter that the public used the invention or that the inventor incidentally derived profit from it. Once an invention has been reduced to practice, it can no longer meet the experimental use exception.

The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use.

If you find that Cerner has shown by clear and convincing evidence that there was a prior public use, then the burden is on RLIS to come forward with evidence showing that the purpose of the prior public use was experimental. You may find that the TeleMed beta testing at Southwest General Hospital before July

8, 1995 does not constitute a prior public use of the invention if the evidence provided by RLIS regarding the experimental use prevents Cerner from meeting its burden of establishing by clear and convincing evidence that there was a prior public use.

### *Obviousness*

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention. Cerner contends that the asserted claims of the patent are invalid because the inventions were obvious.

In determining whether or not Cerner has established obviousness of a claim of the patents-in-suit by clear and convincing evidence you must consider the level of ordinary skill in the field that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed

invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. You must avoid using hindsight; that is, you should not consider

what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

Finally, in making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

(1) Whether or not the invention has achieved commercial success based on the merits of the claimed invention (rather than design needs or market pressure, advertising or similar activities);

(2) Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

(3) Whether or not the invention satisfied a long-felt need;

(4) Whether or not others had tried but failed to make the invention;

(5) Whether or not others copied the invention;

(6) Whether or not the invention achieved any unexpected results;

(7) Whether or not the invention was praised by others;

(8) Whether or not others sought or obtained rights to the patent from the patent holder;

(9) Whether or not experts or those skilled in the field at the making of the invention expressed surprise or disbelief regarding the invention;

(10) Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventor made the invention.

(11) Whether there were changes or related technologies or market needs contemporaneous with the invention.

The presence or absence of any of the above factors may help you to decide whether or not the invention was obvious. Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether RLIS has proven that the claimed invention would have been obvious.

## Question No. 2: Invalidity

For each claim, has Cerner proven by clear and convincing evidence that the claim is invalid? If you find the claim invalid, you should write "YES" in the box next to that claim. Otherwise, write "NO" in that box.

| Claim | Invalid? |
|-------|----------|
| 24 | YES |
| 25 | YES |
| 27 | YES |
| 28 | YES |
| 30 | YES |
| 32 | YES |

If you find at least one claim both infringed and not invalid (that is, for a particular claim you answered "Yes" to Question 1 and "No" to Question 2), proceed to the next section on damages.

## DAMAGES

I have now instructed you as to the law governing RLIS's claims of patent infringement and Cerner's claims of invalidity.  If you determine that RLIS has proved any of its patent infringement claims against Cerner and that the claims of the '436 Patent that are infringed are not invalid, you must determine the amount of damages to which RLIS is entitled.  You should not interpret the fact that I am giving you instructions about damages as any indication that RLIS should win on its patent infringement claim.  It is your task first to decide whether Cerner is liable for the claims asserted against it; only if you find Cerner liable on one or more of the patent infringement claims will you need to turn to the question of damages.

RLIS has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that RLIS establishes that it more likely suffered than not. The patent owner is not entitled to damages that are remote or speculative. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that a party prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  Difficulty in ascertaining the amount of damages is not to be confused with the right of recovery.

Under the Patent Laws, RLIS cannot recover damages for any infringement

that occurred more than six years prior to the date it filed this lawsuit, which was July 11, 2012.

RLIS seeks damages in the form of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began. A reasonable royalty is defined as the money amount RLIS and Cerner would have agreed upon as a fee for use of the invention at the time prior to when infringement began. A reasonable royalty can be a single lump sum amount, or it can be a running royalty. A lump sum amount is a royalty payment where the patent owner receives a single, upfront payment. A running royalty is a royalty where the patent owner collects ongoing, per unit, or percentage payments over a period of time.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation, and not simply a

royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. You should consider all the evidence in making this determination. The damages you award must be adequate to compensate RLIS for the infringement. They are not meant to punish an infringer.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)  The royalties received by RLIS, if any, for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)  The rates paid by Cerner for the use of other patents comparable to the asserted patents.

(3)  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)  Any established policy and marketing program by RLIS to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)  The commercial relationship between RLIS and Cerner, such as whether

they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by RLIS, and the benefits, if any, to those who have used the invention.

(11) The extent to which Cerner has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the

invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   Whether Cerner had commercially acceptable non-infringing alternatives that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.

(16)   The amount that a licensor (such as RLIS) and a licensee (such as Cerner) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty Cerner would have been willing to pay and RLIS would have been willing to accept, acting as normally prudent business people.  The final factor

establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between RLIS and Cerner taking place at a time prior to when the infringement began.

### Question No. 3: Damages

What amount of damages, if any, do you find RLIS has proven by a preponderance of the evidence that it has suffered as a result of Cerner's infringement?


Amount of damages awarded in dollars, if any: $_____

## CONCLUDING INSTRUCTIONS

When you retire to the jury room to deliberate on your verdict, you may take this charge with you, as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

If you want to communicate with me at any time, please give a written message or question to the courtroom deputy, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always disclose to the attorneys your question and my response before I answer your question.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reach an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

During your deliberations, you must not communicate with or provide any

information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

After you have reached your unanimous verdict, your Foreperson is to fill in your answers to the questions on the verdict form.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to conduct your deliberations.

## CERTIFICATE

We, the jury, have answered the above questions and return same into the Court as our verdict.

_____
(Foreperson of the Jury)

Signed this ___ day of January, 2015.