UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RLIS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-209 |
| | § | |
| | § | |
| CERNER CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM AND ORDER

After a trial in this patent infringement case, the jury returned verdicts that Cerner Corporation did not infringe RLIS's patents and those patents were invalid.[1] As the prevailing party, Cerner moves for attorneys' fees under Section 285 of the Patent Act (Docket Entry No. 241). RLIS contends that this case does not meet the standard for exceptionality required by Section 285 to award attorneys' fees.

Section 285 permits the Court to award attorneys' fees to the prevailing party "in exceptional cases." 35 U.S.C. § 285. To meet this standard, Cerner must show by a preponderance of the evidence that this case "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON*

---

[1] The factual and procedural history of this case are detailed in the orders on a new trial (Docket Entry No. 251) and costs (Docket Entry No. 252).

1

*Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756, 1758 (2014). The Court must "consider the totality of the circumstances" in making this determination, *see id.* at 1754, although cases are most commonly declared exceptional if they involve "inequitable conduct before the PTO; . . . fail[ure] to conduct an adequate prefiling investigation or exercise due diligence before filing suit; . . . [a] claim [that] was meritless or lacked substantive strength; . . . litigation [initiated] to extract settlements . . . ; bad faith; [or] litigation misconduct." *Falcon v. Moore Rod & Pipe*, 2015 WL 3823629, at *5–6 (S.D. Tex. June 18, 2015).

Cerner argues that this case is exceptional because RLIS's positions were substantively meritless and it litigated the case in an unreasonable manner. RLIS defends its conduct as zealous advocacy, points out that the Court denied summary judgment on many of Cerner's positions, and otherwise denies that any of its conduct makes this case exceptional. The Court addresses each alleged ground for exceptionality in turn. *See SFA Sys., LLC v. Newegg Inc.*, --- F.3d ----, 2015 WL 4154110, at *3 (Fed. Cir. July 10, 2015) ("Although, under *Octane Fitness*, we ultimately consider these issues together under the 'totality of the circumstances,' it helps to first parse [the movant's] arguments." (citation omitted)).

## I. SUBSTANTIVE STRENGTH OF RLIS'S LITIGATING POSITION

Cerner argues RLIS's indirect infringement theories and validity arguments were completely lacking in substantive strength. Cerner points out that the Court

2

granted judgment as a matter of law on the indirect infringement claims for failure to present evidence of the required intent.   Cerner further contends that RLIS's validity positions "border[ed] on the frivolous" in light of the prior art.

Even when not brought in bad faith, "a case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane*, 134 S. Ct. at 1757.  Several post-*Octane* decisions illustrate the difference between a reasonable position and a meritless one.  In *Biax Corp. v. Nvidia Corp.*, the Federal Circuit reversed the district court's grant of fees because "neither the expert testimony nor the claim construction orders foreclosed [the plaintiff's] infringement position and there was nothing unreasonable about [the plaintiff's] infringement position." --- F. App'x ----, 2015 WL 755940, at *2–4 (Fed. Cir. Feb. 24, 2015).  The Federal Circuit emphasized that the patentee was not unreasonable in continuing to litigate given the possibility that its position could ultimately prevail. *Id.* at *4. On the flip side of the coin, in *Homeland Housewares, LLC. v. Sorensen Research*, the Federal Circuit affirmed an award of fees because the patentee failed to produce any admissible evidence of infringement in response to a motion for summary judgment.  581 F. App'x 877, 880–81 (Fed. Cir. 2014) (noting that more than a year of discovery had taken place and the patentee had failed to even "suggest[] what type of evidence it might present").  Since *Octane*, district courts tend to award fees based on substantive weakness when a party fails to adduce

3

any evidence to support its position[2] or the party advances a position conclusively contradicted by the evidence.[3]

Cerner argues that RLIS's indirect infringement claims lacked evidentiary support because they relied on a single email exchange that took place nine years before the '436 patent issued. But the granting of judgment as matter of law during trial on some claims is not exceptional; it is common. *See Medtronic v. BrainLAB*, 603 F.3d 943, 955 (Fed. Cir. 2010) ("[O]n appeal we sustained the trial court's JMOL decision. However, we do not regard the issue as being so clear-cut that it was unreasonable for Medtronic to litigate the question until it obtained a ruling from the district court on the matter.").

Even more unexceptional is a factfinder siding with one side after hearing hotly contested expert and lay testimony from both sides. That is what happened on Cerner's argument that prior art anticipated the '436 patent by describing text

---

[2] *See, e.g.*, *Cambrian Science Corp v. Cox Comm.*, 2015 WL 178417, *4 (C.D. Cal. Jan. 6, 2015) (awarding fees because the plaintiff "never articulated an infringement theory against the [defendant's products]"); *Intex Rec Corp v. Team Worldwide Corp*, 2015 WL 135532, *3 (D.D.C. Jan. 9, 2015) (awarding fees because the plaintiff relied entirely on "a conclusory expert report" and "flawed, nonsensical, and baseless arguments[] which lacked factual support" in continuing to litigate even after a claim construction order foreclosed the infringement theory).

[3] *See, e.g.*, *Magnetar Tech v. Six Flags*, 2015 WL 4455606, *9 (D. Del. July 21, 2015) (awarding fees because "it was so obvious that [the evidence established inventorship] that plaintiffs' arguments [against that fact] were objectively unreasonable"); *Brilliant Optical Solutions v Comcast*, 2015 WL 1476691, *3 (D. Col. Mar. 27, 2015) (awarding fees because the plaintiff pursued an infringement claim even though it had granted the defendant a license to use the patent); *Lugus IP v. Volve*, 2015 WL 1399175, *5 (D.N.J. Mar. 26, 2015) (awarding fees because the plaintiff's infringement theory clearly contradicted a "basic fact" about how the defendants' product operated).

generation in the same manner as the claims.  The Court rejected this argument at summary judgment on the grounds that the '436 patent claimed the process of converting raw data into a sentence structure, whereas the prior art taught the less sophisticated process of combining information. *See* Docket Entry No. 80-1.[4]  There is nothing exceptional about a patentee defending its presumptively valid patents, and RLIS's validity positions had sufficient strength to make them reasonable to pursue.[5]  The bulk of RLIS's claims thus were not devoid of any evidentiary support, but survived a barrage of summary judgment motions and were supported by expert testimony. *Compare Sorsensen,* 581 F. App'x at 880–81 (noting the patentee failed to "suggest[] what type of evidence it might present"); *Intex*, 2015 WL 135532, at *4 (holding the claims were "baseless" and "lacked factual support").  The merits of RLIS's claims thus do not weight in favor of finding this case exceptional.

## II.   MANNER IN WHICH RLIS LITIGATED THE CASE

Cerner also argues that RLIS litigated the case in an unreasonable manner.  Several decisions by RLIS altered the landscape of this litigation,  but Cerner mainly relies on three choices made after the jury was impaneled.  First, after jury selection but before opening statements, RLIS dropped all the asserted claims of the '948

---

[4] The Court ruled orally.  A transcript is available in the companion case. *See RLIS, Inc. v. Allscripts Healthcare Solutions, Inc.*, 3:12-cv-208, Docket Entry No. 153 at 26–28.

[5] The jury returned a general verdict on invalidity despite Cerner's presentation of several invalidity theories.  Cerner presented strong evidence in support of invalidity findings based on the public disclosure and on-sale bars.

patent and several claims from the '436 patent.  *See* Trial Transcript Telephone Conference (01/06/15) at 3–5.  Second, RLIS dropped its willfulness allegations after the Court relied on those allegations to admit a key piece of evidence that painted Cerner in a bad light.[6]  *See* Trial Transcript Vol. 1 (01/13/15) at 71, 81–82. Finally, RLIS sought to change its infringement theory prior to and during trial.  *See* Trial Transcript Vol. 7 (01/16/15) at 27–34.  Cerner insinuates that RLIS's tactics were in bad faith and contends RLIS's strategy unnecessarily drove up the costs of litigation.   RLIS responds that its efforts reflect nothing more than the typical evolution of a case over the course of litigation.

Again, post-*Octane* decisions assist the Court in evaluating whether RLIS's conduct was exceptional.  In *SFA Systems*, the Federal Circuit affirmed the denial of fees even though the patentee voluntarily dismissed the suit six months before trial and the patentee had sued other defendants and settled for small amounts.  *See* 2015 WL 4154110, at *6–7.  The Federal Circuit emphasized that the district court had

---

[6] As the Court summarized in the order on a new trial (Docket Entry No. 251 at 12 n.11):
> To give some context to the strategic motive Cerner attributed to RLIS's tactics, the parties hotly disputed the admissibility of a piece of evidence—the "McCallie email"—that allegedly showed Cerner copied RLIS's technology after a meeting between inventors at RLIS and Cerner. *E.g.*, Docket Entry Nos. 113 & 124. The Court viewed the email's admissibility as a close call, but admitted the email as relevant to willfulness. But the day after Mr. Lynch testified about the email, RLIS dropped the willfulness claim, leading Cerner to allege that RLIS used a weak willfulness claim to ensure the Court would admit the email, and then jettisoned that legal theory once it served this evidentiary purpose.

denied summary judgment and there was no evidence that the patentee wanted to extort a nuisance value settlement.  *Id.*  But the Federal Circuit reached a different result in *Oplus Tech. v. Vizio*, reversing a district court's denial of fees because of "egregious" discovery abuses and delay tactics, unprofessionalism, harassing behavior, contradictory expert evidence and infringement contentions, and repeated attempts to mislead the court.  *See* 782 F.3d 1371, 1374–75 (Fed. Cir. Apr. 10, 2015).  Since *Octane*, district courts have awarded fees when the patentee had a history of bringing nuisance value cases,[7] was motivated by a bad faith desire to bankrupt the alleged infringer with litigation costs,[8] resisted discovery requests,[9] made no reasonable effort to verify the defendant's products infringed,[10] engaged in inequitable conduct at the PTO,[11] or made misrepresentations during the litigation.[12]

---

[7] *See, e.g.*, *TechRadium v. FirstCall Network*, 2015 WL 862326 (S.D. Tex. Feb 27, 2015).

[8] *See, e.g.*, *Checkpoint Sys v. All-Tag Security*, 2015 WL 4941793 (E.D. Pa. Aug 19, 2015).

[9] *See, e.g.*, *Universal Elecs v Universal Remote Control*, 12-00329 (C.D. Cal. Mar. 10, 2015).

[10] *See, e.g.*, *UltimatePointer v. Nintendo*, 2015 WL 3822577 (W.D. Wash. Mar. 11, 2015).

[11] Cerner did make allegations of inequitable conduct before the PTO in this case, and some evidence related to those allegations was introduced at trial.  The Court, however, reserved a full hearing on this equitable determination until after the trial.  The jury's verdict in favor of Cerner made that hearing unnecessary.  Cerner did not request such a hearing in connection with this fee request.

[12] *See, e.g.*, *Worldwide Home Prods v. Bed Bath and Beyond*, 2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015); *Alzheimer's Inst v. Avid*, 2015 WL 1422337 (E.D. Pa. Mar. 30, 2015); *Digital Reg of Texas v. Adobe*, 2015 WL 1026226 (N.D. Cal. Mar. 9, 2015); *Drone Tech v. Parrott*, 2015 WL 4545291 (W.D. Pa. July 21, 2015)

The Court has repeatedly voiced its displeasure with some of RLIS's trial tactics that Cerner cites. *See, e.g.*, Trial Transcript Vol. 4 (01/13/15) at 71 (stating that RLIS engaged in "repeated gamesmanship and chicanery"). But the Court concludes that they do not rise to the level of exceptional conduct for which an award of fees is warranted. Significantly, Cerner makes no allegations of unprofessional conduct from RLIS's counsel for the more than two years this case was litigated prior to trial. *See Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (emphasizing that the party's overall strategy should be considered, not just "each action . . . individually"). And the Court detected none despite numerous motions and hearings involving claim construction, discovery, and summary judgment in a vigorously contested case. The concerns Cerner raises involve decisions made during the heat of trial. This is thus not a case in which RLIS brought the suit in bad faith or conducted discovery in a vexatious manner.

The best cases for Cerner therefore are those in which the patentee dropped the suit prior to trial. But district courts that found exceptionality in those cases tended to base their decision on repeated instances of the plaintiff waiting until the last possible moment to drop the entire lawsuit, often after realizing that a nuisance settlement was not forthcoming. *Compare Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013) (affirming attorneys' fees because the patentee had repeatedly brought and dismissed entire lawsuits after substantial

8

litigation to "avoid litigation on the validity of its patents"), *with SFA Sys.*, 793 F.3d at 1351 (affirming a denial of fees because, though the patentee "dismissed th[e] suit . . . six months before trial," no evidence showed it was seeking "nuisance value settlements"). Here, in contrast, though RLIS significantly reduced the number of claims during trial, it kept the heart of the case alive until the jury returned a verdict. Indeed, Cerner did not raise any allegations of bad faith when RLIS announced it was dropping the '948 patent and other '436 claims from the suit. *See Lindemann Maschinenfabrik v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1408 (Fed. Cir. 1990) (declining to find a late-made stipulation met the exceptionality requirement because "reduction of the issues . . . was a praiseworthy step, beneficial to the courts and the parties"); Transcript Telephone Conference (01/06/15) at 4–7 (stating that "[a]nything they can do to make this case a little more digestible I think is good" and "we're not going to make a big stink out of it").

## CONCLUSION

Considering the "totality of the circumstances," Cerner has failed to meet its burden of showing the Court that RLIS's overall conduct in this case was vexatious, unreasonable, in bad faith, or otherwise exceptional. The motion for attorneys' fees (Docket Entry No. 241) is **DENIED**.

_____
Gregg Costa
United States Circuit Judge
(Sitting by Designation)

9